UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROGER VAN HECK,                             Case No. 08-13886

        Plaintiff,                         John Feikens
vs.                                         United States District Judge

COUNTY OF MACOMB, *et al.*,                 Michael Hluchaniuk
                                            United States Magistrate Judge

        Defendants.
_____/

## REPORT AND RECOMMENDATION
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Dkt. 29)

## I.    PROCEDURAL HISTORY

Plaintiff filed a complaint against defendants County of Macomb, Macomb County Sheriff Department, Macomb County Prosecutor William Greshak, Deputy Dan Burbeula, Deputy Joseph Cracchiolo and Deputy Christopher Fraser on September 10, 2008. (Dkt. 1). On September 19, 2008, District Judge John Feikens referred this matter to the undersigned for all pretrial purposes. (Dkt. 8). Defendants filed an answer to the complaint on October 1, 2008. (Dkt. 13). Subsequently, defendants filed a motion for summary judgment on December 31, 2009. (Dkt. 29). On January 14, 2010, plaintiffs filed a response to defendants' motion for summary judgment. (Dkt. 31). Defendants filed a reply to plaintiff's response to defendants' motion for summary judgment on February 8, 2010. (Dkt.

33). On February 19, 2009, parties filed a joint statement of resolved and unresolved issues. (Dkt. 34). A motion hearing was filed on February 24, 2010. (Dkt. 34). This matter is now ready for report and recommendation.

For the reasons set forth below, the undersigned **RECOMMENDS** that defendants' motion be **GRANTED** in part and denied in part.

## II.    FACTUAL BACKGROUND

Plaintiff alleges that defendants violated his constitutional rights by conducting an illegal arrest, unlawful entry onto private property without warrant, unlawful entry onto private property to perfect an illegal arrest, malicious prosecution, and falsifying a police report. (Dkt. 1). Plaintiff states that on September 4, 2007, defendant Burbuela, assisted by the other named defendant officers, unlawfully entered plaintiff's property without a warrant to arrest plaintiff for an alleged misdemeanor, which was not committed in their presence. *Id.*

The Macomb County Arrest Report found in plaintiff's attached complaint and defendant's motion for summary judgment recounts the events giving rise to the complaint. (Dkt. 1, Ex. 1; Dkt. 29, Ex. B). On September 4, 2007, Burbeula responded to a call from both tenants at and the landlord of a multi-unit house sectioned into apartments. *Id.* The tenants and landlord called police and claimed that plaintiff had been drinking on the property without their permission, and they claim plaintiff became angry when asked to leave. *Id.* Plaintiff had previously

been on the property and asked to leave by the landlord on several occasions.  *Id.*

Plaintiff purportedly balled his fist and attempted to strike a tenant.  *Id.*  Plaintiff

then left the area by driving away in his truck.  *Id.*

The report noted that plaintiff had a suspended license and a prior conviction

for driving while license suspended.  *Id.*  Roughly one hour later, Burbeula, along

with defendants Cracchiolo and Fraser, located plaintiff at his home and noted his

truck was parked in the home's driveway.  *Id.*  The police saw plaintiff sitting at a

table near the rear of the driveway with another person.  *Id.*  Burbeula recognized

Van Heck from previous calls, and asked for "Roger."  *Id.*  Plaintiff responded that

there was no Roger there, and that his name was "Terry Peltier."  *Id.*[1]  Plaintiff

claimed that his identification was inside the home.  *Id.*  According to the report,

plaintiff continued to be belligerent and uncooperative and clinched his fist.  *Id.*

Fraser and Burbeula lifted plaintiff from his chair and forcefully placed his arms

behind his back using wrist locks.  *Id.*

Plaintiff alleges that the officers then called for a tow truck to have

plaintiff's truck impounded.  (Dkt. 1).  Plaintiff also claims that Cracchiolo and

---

[1] Affidavit of witness Robert Rose states plaintiff was speaking on a cell
phone with a person named "Terry Peltier."  (Dkt. 32, Ex. C).  Rose says plaintiff
signaled to deputies that he was on the telephone.  (Dkt. 32, Ex. C).

Fraser searched plaintiff's truck.[2]  *Id.*  After the incident, plaintiff alleges that

Burbeula added charges, which the court later dismissed on April 8, 2008.  *Id.*

The parties name three unresolved issues stemming from the events in

question.  (Dkt. 34).  Defendants argue that plaintiff's claims against the prosecutor

should be dismissed because he is entitled to absolute immunity, and there is no

evidence to support plaintiff's claim.  *Id.*  Plaintiff argues the prosecutor pursued

"trumped up" charges of resisting arrest and obstructing an officer and is not

entitled to immunity.  *Id.*

Defendants also argue that plaintiff's claims of false arrest and malicious

prosecution against Burbeula should be dismissed because Burbeula had probable

cause to arrest plaintiff and Burbeula is entitled to qualified immunity.  *Id.* Plaintiff

counters that Burbeula was required to obtain a warrant to arrest plaintiff.

 Defendants argue plaintiff's claim of an illegal search of plaintiff's truck by

Cracchiolo and Fraser should be dismissed because there is no evidence that the

search occurred.  *Id.*  Plaintiff contends that three witnesses observed the deputies

search plaintiff's truck.  (Dkt. 32, Ex. C).  Lastly, plaintiff agreed to dismiss claims

the County of Macomb and the Macomb County Sheriff Department.  *Id.*

---

[2] Rose's affidavit states that two deputies searched plaintiff's truck until Lois
Pryuta yelled at the deputies to stop their search.  (Dkt. 32, Ex. C)

Report and Recommendation
Motion for Summary Judgment
*Van Heck v. Macomb Co.*; Case No. 08-13886

# III.   ANALYSIS AND CONCLUSIONS

## A.   Standard of Review

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).  The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005), quoting, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005).  The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

Rule 56 limits the materials the Court may consider in deciding a motion under the rule:  "pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th

Cir. 1995) (citation omitted).  Moreover, affidavits must meet certain requirements:

> A supporting or opposing affidavit must be made on
> personal knowledge, set out facts that would be
> admissible in evidence, and show that the affiant is
> competent to testify on the matters stated. If a paper or
> part of a paper is referred to in an affidavit, a sworn or
> certified copy must be attached to or served with the
> affidavit. The court may permit an affidavit to be
> supplemented or opposed by depositions, answers to
> interrogatories, or additional affidavits.

Fed.R.Civ.P. 56(e)(1).  In accordance with Rule 56(e), the Sixth Circuit has held

"that documents submitted in support of a motion for summary judgment must

satisfy the requirements of Rule 56(e); otherwise, they must be disregarded."

*Moore v. Holbrook*, 2 F.3d 697, 699 (6th Cir. 1993).  Thus, in resolving a Rule 56

motion, the Court should not consider unsworn or uncertified documents, *Id.*,

unsworn statements, *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 968-969

(6th Cir. 1991), inadmissible expert testimony, *North American Specialty Ins. Co.

v. Myers*, 111 F.3d 1273, 1280 (6th Cir. 1997), or hearsay evidence, *Hartsel v.

Keys*, 87 F.3d 795, 799 (6th Cir. 1996); *Wiley v. United States*, 20 F.3d 222,

225-226 (6th Cir. 1994).  Thus, "[a] party opposing a motion for summary

judgment cannot use hearsay or other inadmissible evidence to create a genuine

issue of material fact."  *Id.*, quoting, *Sperle v. Michigan Dept. of Corrections*, 297

F.3d 483, 495 (6th Cir. 2002) (citation and quotation marks omitted).

B.    Prosecutorial Immunity

Title 42 U.S.C. § 1983 provides that every person who acts under color of

state law to deprive another of a constitutional right shall be answerable to that

person in a suit for damages.  "To state a claim under 42 U.S.C. § 1983, a plaintiff

must set forth facts that, when construed favorably, establish (1) the deprivation of

a right secured by the Constitution or laws of the United States (2) caused by a

person acting under the color of state law."  *Miller v. Sanilac County*, 606 F.3d

240, 247 (6th Cir. 2010).

Certain parties, however, enjoy immunity from claims under § 1983.  *Imbler*

*v. Pachtman*, 424 U.S. 409, 418-419 (1979).  The Supreme Court preserved

absolute immunity[3] for judges found in common-law for "acts committed within

their judicial jurisdiction."  *Id.* at 418, quoting, *Pierson v. Ray*, 386 U.S. 547, 554

(1967).  "The common-law immunity of a prosecutor is based upon the same

considerations that underlie the common-law immunities of judges ... acting within

the scope of their duties."  *Id.* at 423.  With respect to the scope of immunity,

prosecutors are immune from civil damages under § 1983 in initiating a

prosecution and in presenting the State's case.  *Id.* at 431; *see also Higgason v.*

*Stephens*, 288 F.3d 868, 878 (6th Cir. 2002) (It is well-established that prosecutors

---

[3]Absolute immunity defeats a suit at the outset, so long as the official's
actions were within the scope of the immunity.  *Imbler*, 424 U.S. at 419 n. 13.

enjoy absolute immunity from suits under § 1983 for conduct related to the

initiation and presentation of the government's case.).  To the extent that a

prosecutor is sued in his individual capacity, such action is barred by absolute

prosecutorial immunity.  Thus, Greshak is absolutely immune from suit while

initiating a prosecution and his motion for summary judgment should be granted.

C.    False Arrest/Malicious Prosecution

Section 1983 claims based on theories of false arrest/false imprisonment[4]

and malicious prosecution stand on the Fourth Amendment and turn on the

question of probable cause.  *Frantz v. Village of Bradford*, 245 F.3d 869, 873 (6th

Cir. 2001).  *See also Gregory v. City of Louisville*, 444 F.3d 725, 748-49 (6th Cir.

2006) (cause of action for "malicious prosecution" under § 1983 is actually a

Fourth Amendment claim to be free from pretrial detention without probable

cause); *Stemler v. City of Florence*, 126 F.3d 856, 871-72 (6th Cir. 1997) (finding

_____

[4] In *Wallace v. Kato*, 549 U.S. 384, 127 S.Ct. 1091, 1095 (2007), the Supreme Court noted the "overlap" between false imprisonment and false arrest claims and, after collectively referring to these claims as "false imprisonment," the Court explained how a false imprisonment claim differs from a malicious prosecution claim.  The Court explained that, "[r]eflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held pursuant to such process-when, for example, he is bound over by a magistrate or arraigned on charges."  *Wallace v. Kato*, 127 S.Ct. at 1096.  After such legal process begins, "unlawful detention forms part of the damages for the 'entirely distinct' tort of malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by wrongful institution of legal process."  *Id.*

the existence of probable cause for arrest forecloses false arrest claims); *Baker v. McCollan*, 443 U.S. 137, 142-43 (1979) ("[b]y virtue of its 'incorporation' into the Fourteenth Amendment, the Fourth Amendment requires the States to provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty.").

The same is true under Michigan law. Thus, plaintiff's state law claims for false arrest/false imprisonment and malicious prosecution also turn on the question of probable cause. *Blase v. Appicelli*, 489 N.W.2d 129, 131 (Mich.App. 1992) ("[t]o prevail on a claim of false arrest, the plaintiff must show that the arrest was not legal, i.e., that it was made without probable cause"); *id.* ("[o]ne element that the plaintiff must prove to succeed on an action for malicious prosecution is the absence of probable cause for the proceedings"); *Peterson Novelties, Inc. v. Berkley*, 259 Mich.App 1, 18 (2003) (To sustain a claim of false imprisonment, the confinement must "have occurred without probable cause to support it.").

Thus, the Court must examine whether the uncontroverted evidence establishes a lack of probable cause for the offenses for which plaintiff was arrested, which are trespass, assault, resisting/obstructing arrest, and driving with a suspended license.[5] Plaintiff's claim with respect to resisting or obstructing arrest

---

[5] "It is well established that entries in a police report which result from the officer's own observations and knowledge may be admitted *but that statements made by third persons under no business duty to report may not.*" *Miller v. Field*,

is easily disposed of because he pleaded no contest to that charge, which is an absolute bar to plaintiff's § 1983 suit. *Darrah v. City of Oak Park*, 255 F.3d 301 (6th Cir. 2001). According to plaintiff, defendants did not, however, have probable cause to arrest him for the other offenses because the information from third-parties was insufficient and because the arrest was an unlawful warrantless arrest where defendants entered the curtilage of his property to effect the arrest.

     1.    Curtilage

"[T]he Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Payton v. New York*, 445 U.S. 573, 589-590 (1980). Here, plaintiff argues that his driveway, which was entered by defendants, was a protected part of the "curtilage"[6] of his home. A driveway may, or may be part of

---

35 F.3d 1088, 1091 (6th Cir. 1994) (emphasis added), quoting, *United States v. Pazsint*, 703 F.2d 420, 424 (9th Cir. 1983). The undersigned considers the police report and witness statement, not necessarily for the truth of the matters asserted therein, but for purposes of assessing the reasonableness of defendants' actions, based on the information in their possession at the time of the investigation and arrest of plaintiff. *See e.g.*, *Miller*, 35 F.3d at 1091, quoting, *Roland v. Johnson*, 1991 WL 84346, *4 ("Hence, the purpose for which the police reports in *Roland* were introduced was not to prove the truth of the third-party statements contained in the reports, but to establish the effect of the reports on the prison officials who, presumably, reviewed them.").

    [6] An area is considered part of the curtilage of a dwelling if it "is so intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection." *U.S. v. Redmon*, 138 F.3d 1109, 1128 (7th Cir. 1998) (*en banc*) (J. Evans, concurring), quoting, *United States v.*

the curtilage of a dwelling.  *See Knott v. Sullivan*, 418 F.3d 561, 573 (6th Cir.

2005) (finding enforcement officers' warrantless entry onto homeowner's

driveway did not violate homeowner's Fourth Amendment rights, for purpose of

homeowner's § 1983 action); *U.S. v. Smith*, 783 F.2d 648, 653 (6th Cir. 1986)

(finding whether a driveway is protected from entry by police officers depends on

circumstances and the fact that driveway is within curtilage of house is not

determinative, if it is accessibility and visibility from public highway rule out any

reasonable expectation of privacy.).  Several courts have also concluded that a

shared driveway is not part of the curtilage and that the expectation of privacy in

the curtilage is reduced in multi-family housing units.  *Redmon*, 138 F.3d at 1128;

*see also Sanchez v. City of Los Angeles*, 2010 WL 2569049 (C.D. Cal. 2010)

("Plaintiff could not reasonably expect privacy in the backyard of a multi-unit

residence that was connected to an easily accessible driveway where the facts raise

the inference that the yard was not enclosed in any way nor shielded from the view

of anyone passing by, or from the occupants of the other units on the property.")

Plaintiff admits that his driveway is connected to the street and that it is a shared

driveway.  (Dkt. 32, p. 6) ("The plaintiff's driveway may [be] a shared driveway

for twenty feet, however, the plaintiff's truck block[ed] the entrance and view from

---

*Dunn*, 480 U.S. 294, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987).  "The curtilage is
protected because people enjoy a reasonable expectation of privacy in those areas
intimately associated with the home in which they live."  *Id*.

the roadway to the main driveway and backyard as did a second vehicle at the end of the driveway, as did a ten foot diameter maple tree."); (Dkt. 29, Ex. E) (Plaintiff admits in his deposition that the driveway is a shared driveway for his apartment complex). Under such circumstances, plaintiff's shared driveway cannot be part of the curtilage of his dwelling and defendants did not require a warrant to arrest plaintiff.

> 2. Defendants need not establish probable cause beyond that for the resisting and obstructing charge.

Authority exists for the proposition that it does not matter whether defendants had probable cause to arrest plaintiff for the offenses of trespass, driving on a suspended license, or assault because they had probable cause for the resisting and obstructing charge. In *U.S. v. Shepherd*, 160 Fed.Appx. 489, 491 (7th Cir. 2005), the defendant claimed that the officers had no probable cause to arrest him for the underlying offense of murder and thus, the warrantless arrest for fleeing and obstructing was improper. The Court held that it makes no difference whether the officers had probable cause to arrest the defendant for murder when they stopped him. Rather, "all that matters is whether they had probable cause to arrest for *any* offense." *Id.*, citing, *Wren v. United States*, 517 U.S. 806, 813 (1996). The Sixth Circuit also examined this issue in the context of a § 1983 claim in *Brooks v. Rothe*, 577 F.3d 701, 706 (6th Cir. 2009). The Court first looked at

the definition of "obstruct" in the Michigan statute, which includes "the use or threatened use of physical interference or force or a knowing failure to comply with a lawful command." Mich. Comp. Laws § 750.81d(7)(a). The plaintiff argued that she could not have violated § 750.81d(1) because the command she was resisting was not "lawful." The Sixth Circuit rejected this argument for two reasons. First, it held that "a straightforward reading of the language of § 750.81d(7)(a) provides that the law can be violated in two ways: by physically resisting a command, whether lawful or unlawful, or by refusing to comply with a lawful command without using force." The Court found its reading to be supported by the Michigan Court of Appeals' opinion in *People v. Ventura*, 262 Mich.App. 370, 686 N.W.2d 748 (2004), where that court held that "[a] person may not use force to resist an arrest made by one he knows or has reason to know is performing his duties regardless of whether the arrest is illegal when charged pursuant to MCL 750.81d.... [Section] 750.81d does not require a showing that defendant's arrest was lawful[.]" *Brooks*, 577 F.3d at 706. Thus, defendants need not show that the arrest for trespass, driving on a suspending license, or assault was supported by probable cause if there was probable cause to support the arrest for resisting and obstructing. And, as set forth above, plaintiff cannot dispute that probable cause supported his arrest for resisting and obstructing given his plea of no contest to this charge.

3.    Probable cause exists for the charges of assault and driving on a suspended license.

Even if a probable cause finding were necessary for the charges of driving without a license and assault, the undersigned finds that probable cause exists on this record.[7]  Notably, under Michigan law, an officer who has "reasonable cause" to believe a misdemeanor punishable by imprisonment for more than 92 days (which includes assault and driving with a suspended license) has been committed that a particular person committed it, the officer may arrest that person without a warrant.  Mich. Comp. Laws § 764.15(d).  Probable cause denotes "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense."  *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979); *Crockett v. Cumberland Coll.*, 316 F.3d 571, 580 (6th Cir. 2003).  Whether probable cause exists is determined under a reasonableness standard based on all the facts and circumstances within the officer's knowledge at the time of the arrest or seizure.  *Thacker v. City of Columbus*, 3128 F.3d 244, 255 (6th Cir. 2003).  And, the law is

---

[7] There is authority standing for the proposition that resisting and obstructing a police officer, has as one of its elements that "the officer must have been carrying out lawful duties."  *Strutz v. Hall*, 308 F.Supp.2d 767, 784 n. 9 (E.D. Mich. 2004), quoting, *People v. Simpson*, 207 Mich.App. 560, 526 N.W.2d 33 (1994).  However, this authority, to the extent it is inconsistent with *Brooks* and *Ventura*, appears to have been overruled by these cases.

Report and Recommendation
Motion for Summary Judgment
*Van Heck v. Macomb Co.*; Case No. 08-13886

settled that "where there is probable cause to prosecute, a § 1983 action for malicious prosecution will not lie." *Jolley v. Harvell*, 2007 WL 3390935, *6 (6th Cir. 2007), quoting, *McKinley v. Mansfield*, 404 F.3d 418, 444-45 (6th Cir. 2005).

Contrary to plaintiff's contentions, eyewitness testimony alone is sufficient to establish probable cause. *Ahlers v. Schebil*, 188 F.3d 365, 370-71 (6th Cir. 1999); *see also United States v. Amerson*, 1994 WL 589626, *2-3 (6th Cir. 1994) (Officers are entitled to rely on an eyewitness identification to establish adequate probable cause with which to sustain an arrest.).  In order to sustain a claim that there are genuine issues of fact regarding the existence of probable cause, plaintiff must show that defendants had reason to think that the eyewitness identification was in some way untruthful or unreliable. *Ahlers*, 188 F.3d at 371.  In this case, defendant Burbeula met with four witnesses. One witness, William Krause, told the officer than plaintiff had been there a short time ago and had been drinking, and Mr. Krause told plaintiff to leave his property.  Mr. Krause also reported that plaintiff attempted to strike him with his fist, but Mr. Krause managed to push him off balance and avoid being struck.  Carl Johnson told the officer that plaintiff "threatened to fight" anyone in the area.  Mr. Johnson and Mr. Krause both witnessed plaintiff drive away in this truck.  Eva and Ronnie Johnson, the landlords of the property in which Mr. Krause resides, told the officer that they,

along with the tenants, had previously told plaintiff that he was not permitted on the property. (Dkt. 29, Exs. B, C).

Under Michigan law, a "simple criminal assault has been defined as 'either an attempt to commit a battery or an unlawful act which places another in reasonable apprehension of receiving an immediate battery.'" *People v. Grant*, 211 Mich.App. 200, 202; 535 N.W.2d 581 (1995), quoting, *People v. Johnson*, 407 Mich. 196, 210; 284 N.W.2d 718 (1979). Based on Mr. Krause's statement, there is no doubt that defendants had probable cause to arrest plaintiff for criminal assault, which carries a potential penalty that exceeds 92 days in jail. *See* Mich. Comp. Laws § 750.82(1). Thus, there was no violation of state law or Fourth Amendment principles.

Under Michigan law, a "person whose operator's or chauffeur's license or registration certificate has been suspended or revoked and who has been notified as provided in section 212 of that suspension or revocation ... shall not operate a motor vehicle upon a highway or other place open to the general public or generally accessible to motor vehicles, including an area designated for the parking of motor vehicles, within this state." Mich. Comp. Laws § 257.904(1). Defendants had statements from two eyewitnesses who saw plaintiff driving his motor vehicle and had confirmation that plaintiff's license was suspended. The undersigned finds that probable cause existed to arrest plaintiff for this offense,

which carries a potential penalty that exceeds 92 days in jail. *See* Mich. Comp. Laws. § 257.904(3)(a). Thus, there was no violation of state law or Fourth Amendment principles.

Trespass does not carry a penalty in excess of 92 days in jail and thus, a warrantless arrest would not be permitted under Michigan law. However, this is likely irrelevant given that the arrest for all other charges was appropriate under state and federal law and is supported by probable cause. Notably, the United States Supreme Court has held that state law does not define the contours of the Fourth Amendment. *Virginia v. Moore*, 553 U.S. 164, 128 S.Ct. 1598 (2008) (Police officers did not violate the Fourth Amendment by arresting motorist whom they had probable cause to believe had violated Virginia law by driving with suspended license, even though, as matter of Virginia law, this misdemeanor offense of driving with suspended license was one for which, under particular circumstances of motorist's case, officers should have issued summons rather than made arrest.). The question is whether the arrest was supported by probable cause. The Sixth Circuit has held that a warrantless criminal trespass arrest may be based on eyewitness statements. *Banks v. Kentucky State Police*, 57 Fed.Appx. 242, 243-244 (6th Cir. 2003). While such an arrest may not be appropriate where the eyewitness testimony is conflicting, *Logsdon v. Hains*, 492 F.3d 334 (6th Cir. 2007), no such conflicts are present on the record before the Court. Rather, the

evidence shows that multiple witnesses made the same consistent allegations against plaintiff regarding the trespass claim. Plaintiff has not offered any evidence to suggest that defendants should have known that these witnesses were being untruthful or that their statements should have been viewed with suspicion. Thus, the undersigned concludes that the arrest for criminal trespass is also supported by probable cause and did not violate the Fourth Amendment.

      D.    <u>Search of Plaintiff's Automobile</u>

An illegal search or seizure can provide a basis for § 1983 liability. *Wilson v. Layne*, 526 U.S. 603 (1999). "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment-subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). There are exceptions to the warrant requirement for the search of automobiles. One exception concerns a search of an automobile incident to an arrest, as developed by the Supreme Court of the United States in *New York v. Belton*, 453 U.S. 454 (1981), and more recently, in *Arizona v. Gant*, 129 S.Ct. 1710 (2009).[8] In

_____

[8] In any event, *Gant* would not apply to the present case for purposes of qualified immunity, as noted in by the Supreme Court in its decision. *Id.* at 1723, n. 11 ("Because a broad reading of *Belton* has been widely accepted, the doctrine of qualified immunity will shield officers from liability for searches conducted in reasonable reliance on that understanding."). Gant narrowed the circumstances under which a warrantless search of a vehicle was allowed incident to the arrest of a person and, therefore, the broader pre-*Gant* standards are applied to these

addition, there is the "automobile exception" for the search of an automobile when there is probable cause to believe that it contains evidence of criminal activity as set forth in *United States v. Ross*, 456 U.S. 798 (1982).  According to defendants, there is no evidence that any search occurred.  They cite the police report, which does not indicate that any search occurred and the deposition testimony of Robert Rose, who was present when plaintiff was arrested. (Dkt. 29, Exs. B, F).  The undersigned has reviewed the testimony cited by defendants and Mr. Rose was never questioned about the alleged search.  Absent a direct question on this issue, the undersigned cannot say the absence of any mention of the search in the deposition or the police report constitutes sufficient evidence that the search did not occur.  Moreover, plaintiff submitted a sworn affidavit from Mr. Rose which indicated that two of the deputies did, in fact, search plaintiff's vehicle.  (Dkt. 32, p. 27).

In reply, defendants argue that, even if a search occurred, they are entitled to qualified immunity because a warrantless search of a vehicle incident to arrest is permissible "when the arrestee was a recent occupant of the vehicle, and the search is to remove weapons and/or prevent the plaintiff from destroying evidence."  (Dkt. 33, p. 3).  Defendants cite two cases in support of their position.  In the view of the undersigned, neither case helps defendants' cause.  The first case is *U.S. v.*

circumstances, as discussed below.

*Laughton*, 437 F.Supp.2d 665 (E.D. Mich. 2006) in which the court held  that a warrantless search of the vehicle following a traffic accident could not be justified as a search incident to arrest of the defendant who was a recent occupant of the vehicle.  While the defendant had admittedly occupied the vehicle, the officers did not arrive on scene until approximately 30 minutes after the accident and did not observe him in the vehicle.  Moreover, the vehicle's position in a ditch was not in close proximity to the defendant, who was standing on the side of the road and then in a squad car at the time of his arrest.  In the view of the undersigned, the present facts are even less persuasive than those in *Laughton*.  There was no admission that plaintiff was in his vehicle, the lapse of time between when witnesses saw him driving and when he was arrested exceeded 30 minutes, and he too was not in sufficiently close proximity to his vehicle.

The second case cited by defendants is *Northrop v. Triplett*, 265 F.3d 372, 379 (6th Cir. 2001), the Court approved a search incident to arrest even though the item seized was no longer accessible to the defendant at the time of the search because he had been in immediate control of the item very near the time of his arrest.  Specifically, the defendant had a duffle bag on his shoulder as the officers approached him.  The officers observed him removing the bag from his shoulders and placing it at his feet.  He was then stopped near the bag, placed under arrest, and the bag was searched almost immediately.  These facts are nothing like those

before the Court in the present case and this case provides no support for defendants' position that if they had conducted a search, it was appropriate because it was incident to plaintiff's arrest. Defendants do not argue, and have not offered any evidence or argument, to suggest that probable cause existed such that the "automobile exception" would apply under these circumstances.

Based on the foregoing, the undersigned concludes that plaintiff has established a genuine issue of material fact to whether his vehicle was searched and whether such a search violated his rights under the Fourth Amendment.

## IV. RECOMMENDATION

Based on the foregoing, the undersigned **RECOMMENDS** that defendants' motion be **GRANTED** as to plaintiff's claims for false arrest and malicious prosecution and **DENIED** as to his § 1983 claim for the unlawful search of his vehicle in violation of the Fourth Amendment. The only remaining defendants in this action are defendants Cracchiolo and Fraser, who are alleged to have conducted the unlawful search. The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing

objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 9, 2010                    s/Michael Hluchaniuk
                                         Michael Hluchaniuk
                                         United States Magistrate Judge

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on August 9, 2010, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send electronic notification to the following: <u>Peter W. Peacock</u>, and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participant: <u>Roger VanHeck, 94 South Rose, Mt. Clemens, MI 48043</u>.

s/Darlene Chubb_____
Judicial Assistant
(810) 341-7850
darlene_chubb@mied.uscourts.gov