UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROGER VAN HECK,

        Plaintiff,

                                  Case No. 08-cv-13886

                                  HON. STEPHEN J. MURPHY, III

        v.

COUNTY OF MACOMB, et al.,

        Defendants.

_____

**OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION**
(docket no. 37)**, OVERRULING OBJECTIONS** (docket no. 38)**, AND
GRANTING IN PART AND DENYING IN PART DEFENDANTS'
 MOTION FOR SUMMARY JUDGMENT** (docket no. 29)

This cause of action arises out of Plaintiff's 42 U.S.C. § 1983 claims of illegal

imprisonment, unlawful entry onto private property without a warrant, unlawful entry onto

private property to perfect an illegal arrest, malicious prosecution, and falsifying a police

report.  At this time, the defendants include Macomb County Prosecutor William Greshak,

and police deputies Dan Burbeula, Joseph Cracchiolo, and Christopher Fraser.[1]  Plaintiff's

claims stem from his September 4, 2007, arrest for trespassing, assault, driving with a

suspended license in the second degree, and resisting arrest.

Defendants filed a Motion for Summary Judgment ("Motion"), Dkt. 29, which was

fully briefed by the parties.  A hearing was held on the motion on February 24, 2010, before

_____

[1]      This Court previously granted Plaintiff James Biernat's Motion to Dismiss
(Dkt.  23), and the parties have stipulated to the dismissal with prejudice of Defendants
County of Macomb, and the Macomb County Sheriff's Department (Dkt.  43).

1

the magistrate judge.  Following the hearing, the magistrate judge issued a Report and Recommendation ("Report") in which he recommended that Defendants' Motion be denied in part and granted in part.  The defendants timely filed objections to the Report, and Van Heck filed a response to the defendants' objections.  After reviewing de novo those parts of the magistrate judge's Report to which the defendants objected, the Court will adopt the Report in full, and order that the defendants' motion be granted in part and denied in part.

## BACKGROUND

On September 4, 2007, Burbeula responded to a call at 103 Grand Ave. in Mount Clemens, Michigan.  Among those present upon his arrival were William Krause, Eva Johnson, Ronnie Johnson, and Carl Johnson.  Arrest R. 1, Docket No. 1, Ex. C1.  Krause informed Burbeula that Van Heck had been on the property "a short time ago and had been drinking."  *Id.*  Plaintiff entered the back porch of the residence "to deliver a note to someone."  Krause Witness Statement, Mot. Summ. J., Ex. C, Docket No. 29.  According to the witnesses, the property landlords, Eva and Ronnie Johnson, had informed Van Heck that he was not allowed on the property, at which point Van Heck became "enraged."  *Id.*  Van Heck "began exchanging words" with Krause, and then "balled his fist, cocked back, and attempted to strike [him]."  *Id.*  Krause was able to knock Van Heck off balance to avert the contact, at which point Van Heck "started to use profanity while threatening to fight any party in the area."  *Id.*  When Van Heck left the property, the witnesses observed him getting into his truck and driving it westbound down Grand Ave.  *Id.*; Arrest R. 1.

According to the landlords, Van Heck had been informed "several times in the past" that he was not allowed on the property.  Arrest R. 1.  The other tenants of the property also informed Burbeula that Van Heck "was not welcome on the premises and [had] been

2

duly informed of this." *Id.* Both the landlords and the tenants requested that Van Heck be prosecuted for trespassing. *Id.*

Burbeula spoke with the witnesses at 103 Grand Ave., and then ran Van Heck's name through the police database. Van Heck's record indicated that his license was suspended as of March 30, 2007, and that he had a prior June 25, 2006, conviction in Eastpointe, Michigan, for driving with a suspended license. Arrest R. 1.

Burbeula, Cracchiolo, and Fraser drove to Van Heck's home and identified his pickup truck parked in the driveway. They then identified Van Heck, who was sitting at a table in the rear of his driveway with Robert Rose. Arrest R. 1. They said that they were looking for Roger, to which Van Heck responded "there isn't any Roger here." *Id.* Upon being asked for his name, Van Heck identified himself as "Terry Peltier," and said that he had identification in the house that could verify this. Burbeula informed Van Heck that he already recognized him as Roger Van Heck both from around town and from prior incidents. *Id.* at 2. Burbeula reported that Van Heck "continued to be belligerent and uncooperative," and "insisted that he . . . never left the house." *Id.* Burbeula informed him that there were "witnesses to the contrary." *Id.* When Burbeula informed Van Heck that he was under arrest for trespassing, assault, and driving with a suspended license, "[h]e said he wasn't going and clinched [sic] his fists." *Id.* Thereafter, Burbuela reported that "Deputy Fraser and [he] lifted [Van Heck] from his chair and had to forcefully place his arms behind his back using wrist locks as he struggled to resist [them]." *Id.* Van Heck claims that as he was being placed into the squad car, officers Cracchiolo and Fraser "illegally and unlawfully" searched his truck "in violation of the Fourth and Fourteenth Amendment[s]." Compl. ¶ 12, Docket No. 1.

3

The Arrest Report states that "[b]ecause of the elapsed time between the incident on Grand and the arrest on Eldridge (approximately one hour)," the officers were unable to establish whether Van Heck was illegally under the influence at the time he drove his truck, and he was therefore not charged with driving under the influence.  Compl. ¶ 12.

## LEGAL STANDARDS

I.    Motion for Summary Judgment

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  A fact is material only if it might affect the outcome of the case under the governing law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  On a motion for summary judgment, the court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Eward*, 241 F.3d 530, 531 (6th Cir. 2001).

The moving party has the initial burden of demonstrating an absence of evidence to support the non-moving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587.  In particular,

> The respondent must do more than simply show that there is some metaphysical doubt as to the material facts.  Further, where the record taken as a whole could not lead a rational

4

> trier of fact to find for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

*Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1087-88 (6th Cir. 1996) (internal alterations and citations omitted). Ultimately, the Court must determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to a jury or whether the evidence is so one-sided that the moving party must prevail as a matter of law. *Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the Van Heck's position will be insufficient; there must be evidence on which the jury could reasonably find for the Van Heck.").

## II.   Review of a Report & Recommendation

The parties are entitled to this Court's "de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). *See United States v. Raddatz*, 447 U.S. 667 (1980); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Objections must be calculated to "provide the district court with the opportunity to consider the specific contentions of the parties and to correct any errors immediately." *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004). A "general objection . . . that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context." *Id.* Upon review, this Court is required to "re-examine all the relevant evidence previously reviewed by the magistrate to determine whether the recommendation should be accepted, rejected, or modified in whole or in part." *Aldrich*, 327 F. Supp. 2d at 747.

**ANALYSIS**

The defendants' motion for summary judgment claimed that (1) Van Heck's claim of malicious prosecution against Greshak should be dismissed because he is entitled to absolute immunity as a prosecutor, and Van Heck has no evidence to support his claim; (2) Van Heck's claim against Deputy Burbeula for false arrest and malicious prosecution should be dismissed because the officer had probable cause to make the contested arrest; because he is entitled to qualified immunity; and because he did not make the decision to prosecute; and (3) Van Heck's claim of an illegal search in violation of the Fourth Amendment conducted by Defendant Deputies Cracchiolo and Fraser should be dismissed as he has provided no evidence that the search occurred.[2]

The magistrate judge's Report recommended that the defendants' motion be granted as to claims (1) and (2) above, but denied as to claim (3).  Defendants Cracchiolo and Fraser filed timely and specific objections, arguing that they are entitled to summary judgment with respect to the illegal vehicle search claim because the search was constitutionally permissible as it was conducted incident to lawful arrest, or, in the alternative, because their actions were protected under qualified immunity.

The Court adopts the Report as to claims (1) and (2) without additional discussion, and addresses each of Defendants objections as to its findings on claim (3) in turn.

I.    <u>There is a Genuine Issue of Material Fact as to Whether the Search Occurred</u>

Van Heck's complaint alleges that following his arrest, after he was handcuffed and

---

[2]    Those portions of Defendants' Motion for Summary Judgment pertaining to Macomb County and the Macomb County Sheriff's Department are now moot, and will not be addressed by the Court.  (*See* Dkt. 43.)

6

as he was being placed into the squad car, defendants Cracchiolo and Fraser "illegally and unlawfully search[ed] [Van Heck's] truck, in violation of the Fourth and Fourteenth Amendment [sic]." Compl. ¶ 12. Defendants' Motion for Summary Judgment argued that there is no evidence that a search occurred, and therefore Van Heck's claim of illegal search should be dismissed. The Report found that Van Heck's allegations, along with the affidavit of Van Heck's key witness, Robert Rose, as contained in Van Heck's response to the defendant's motion, demonstrated evidence of a search, and therefore Defendants had not met their burden for summary judgment.

The Court agrees with the findings of the Report. The absence of any mention of the search in the deposition of Robert Rose, without a direct question on the issue, or in the police or arrest report, does not constitute sufficient evidence that the search did not occur. Furthermore, Van Heck has submitted the unrebutted affidavit of Rose, in which Rose claims that he witnessed Cracchiolo and Fraser search Van Heck's vehicle during Van Heck's arrest. Rose Aff. 2, Pl.'s Case Summ. & Order Denying Def.'s Summ. J., Ex. C, Docket No. 32.[3]

II.    Objection 1: Search Incident to Lawful Arrest

In their reply and objections, the defendants argue that to the extent that the Court finds evidence that the search did occur, the search was permissible as a search incident to lawful arrest to remove weapons and/or prevent the arrestee from destroying evidence.

---

[3]    Though Defendants do not directly object to the Report's finding that Defendants failed to demonstrate a lack of evidence that the search occurred, the Court finds it appropriate to revisit this claim and dismiss Defendants' contention that Van Heck's claim of illegal search should be dismissed for lack of evidence before considering claims premised on the occurrence of a search.

Warrantless searches "are per se unreasonable under the Fourth Amendment–subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). Defendants point to two of these exceptions that they argue justify the alleged search of Van Heck's truck.

A.   <u>Search Incident to Arrest to Effectuate Arrest and for Officer Safety</u>

The Supreme Court has carved out an exception for warrantless search incident to arrest to preserve the safety of the arresting officer and to prevent frustration of the arrest. *Chimel v. California*, 395 U.S. 752, 762–63 (1969). The Court has articulated the boundaries of this carve-out for the warrantless search of an automobile incident to arrest. In *New York v. Belton*, 453 U.S. 454, 460 (1981), the Supreme Court held that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile," including any containers, whether open or closed. In *Arizona v. Gant*, 129 S. Ct. 1710 (2009), the Court rejected a broad reading of *Belton*, and held that search of an automobile incident to arrest is only authorized when there is a reasonable possibility that the suspect could gain access to the vehicle at the time of the search. The Court explained that limitations on the scope of a search incident to arrest are meant to ensure that such search be "commensurate with its purposes of protecting arresting officers and safeguarding any evidence of the offense of arrest that an arrestee might conceal or destroy." *Id.* at 1716. The Court held that a police search of an automobile incident to arrest is authorized "only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." *Id.* at 1719. The Court noted that, given the "many means of ensuring the safe arrest of vehicle occupants, it will be the rare

8

case in which an officer is unable to fully effectuate an arrest so the real possibility of access to the arrestee's vehicle remains." *Id.* at n.4. The Sixth Circuit has recognized the limitations placed upon *Belton* by *Gant.* *See, e.g.*, *United States v. Lopez*, 567 F.3d 755, 757–78 (6th Cir. 2009) (finding a vehicle search violated the petitioner's Fourth Amendment rights when he "was not within reaching distance of his vehicle's passenger compartment at the time of the search, but was instead handcuffed in the back seat of the patrol car.").

Defendants have failed to demonstrate that a reasonable jury could not find that their alleged search was not justified as a search incident to arrest. According to both Van Heck and the affidavit of his main witness, Mr. Rose, the search of the vehicle occurred when Van Heck was in physical custody of the police and nowhere near the inside compartments of his vehicle. Compl. ¶ 12; Rose Aff. ¶ 12. Since the Supreme Court's ruling in *Gant*, it is clear that the search of a vehicle when an arrestee is not physically proximate to the vehicle and already restrained, as Van Heck was here, is explicitly prohibited.[4]

---

[4]     Defendants argue that the focus of the Court should not be upon the location of the arrestee or his ability to access the vehicle upon arrest, but instead upon whether the search was *contemporaneous to arrest*. In doing so, they disregard the policy concerns underlying the justifications for warrantless searches as permitted by *Belton*, and the Supreme Court's narrowing of the application of those doctrines in *Gant*.

The defendants cite *Arwine v. Bannan*, 346 F.2d 458 (6th Cir. 1965), as authority for their understanding of the Fourth Amendment. The Sixth Circuit decided *Arwine* four years *prior* to *Chimel*, and it is unlikely that the search approved in that case, which took place in a police department garage hours after the appellant had been arrested and secured, would be justified under the rule the Court adopted in *Gant*.

B.   <u>Search Incident to Arrest for Evidence Relevant to Crime of Arrest</u>

A vehicle may also be searched without a warrant and incident to lawful arrest where it is "reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." *Gant*, 129 S.Ct. 1719 (quoting *Thornton v. United States*, 541 U.S. 615, 632 (2004)). The justification for this type of search is the need to discover and preserve evidence. *Knowles v. Iowa*, 525 U.S. 113, 118 (1998). Such a search is unconstitutional when it could not possibly have unearthed evidence *relevant to the crime of arrest*. *See id.* ("Once [the suspect] was stopped for speeding and issued a citation, all the evidence necessary to prosecute that offense had been obtained. No further evidence of excessive speed was going to be found either on the person of the offender or in the passenger compartment of the car."); *see also Gant*, 129 S.Ct. at 1719.

Beyond conclusively stating that the search was meant "to remove weapons and/or prevent the Van Heck from destroying evidence," Reply at 3, defendants have not provided evidence or argument warranting summary judgment on this ground. Defendants have not specifically stated that the search was based upon a reasonable belief that evidence relevant to the crimes of arrest may have been found in the vehicle. Furthermore, Defendants have neither advised the Court what evidence they reasonably expected to find in the vehicle, nor for which crime of arrest (there were four — trespassing, assault, driving while suspended license, and resisting arrest) such evidence would have been relevant.

II.   <u>Objection 2: Qualified Immunity</u>

Defendants argue that, alternatively, they are entitled to summary judgment on Van Heck's claim of illegal search because they are shielded by qualified immunity. "The

10

doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 129 S.Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). This protection applies "regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Id.* (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting)). "Qualified immunity will protect all but 'the plainly incompetent or those who knowingly violate the law,'" *Thacker v. City of Columbus*, 328 F.3d 244, 260 (6th Cir. 2003) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)), and it "applies if reasonable officials could disagree as to whether the conduct violated the Van Heck's rights" *Thomas v. Cohen*, 304 F.3d 563, 580 (6th Cir. 2002) (quoting *McCloud v. Testa*, 97 F.3d 1536, 1553 (6th Cir. 1996)).

In *Saucier v. Katz*, 533 U.S. 194, 201–02, the Supreme Court mandated a two-step sequence for resolving qualified immunity claims. This approach requires a court to first determine whether the facts alleged, taken in a light most favorable to the party asserting the injury, demonstrate a violation of the party's constitutional rights. *Id.* at 201. If no right is found to have been violated, no further inquiry is necessary. If, however, a violation can be established, the court must then ask whether the right was clearly established. *Id.*[5]

---

[5]        In *Pearson*, the Supreme Court responded to the many criticisms of the approach set forth in *Saucier*, which often required courts to reach constitutional questions where they could have been avoided. *Pearson*, 129 S.Ct. at 817-18. The *Pearson* Court held that

>        while the sequence set forth [in *Saucier*] is often appropriate,
> it should no longer be regarded as mandatory. The judges of
> the district courts and the courts of appeals should be

11

Because the Court finds that Van Heck's claim of illegal warrantless search may not be summarily dismissed at this time, the remaining question before the Court is whether the alleged search of the automobile violated a "clearly established" constitutional right. [6]

"For a constitutional right to be clearly established, 'its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Leonard v. Compton*, No. 1:03CV1838, 2005 WL 1460165, at *5 (N.D. Ohio June 17, 2005). "[O]fficials can still be on notice that their conduct violates established law . . . in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). That is, previous cases exploring the contours of the law need not be "fundamentally similar." *Id.* "Although earlier cases involving 'fundamentally similar' facts can provide especially strong support

_____

> permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.

*Id.* at 818. The Sixth Circuit has interpreted *Pearson* to mean that courts

> 'are free to consider those [*Saucier*] questions in whatever order is appropriate in light of the issues before [them],' *Moldowan v. City of Warren*, 570 F.3d 698, 720 (6th Cir. 2009), such that [courts] need not decide whether a constitutional violation has occurred if [they] find that the officer's actions were nevertheless reasonable. However, because *Pearson* left in place *Katz's* core analysis, all pre-*Pearson* case law remains good law.

*Jones v. Byrnes*, 585 F.3d 971, 975 (6th Cir. 2009).

[6]      In the past, the Sixth Circuit occasionally engaged in a three-step qualified immunity analysis. But the two-step approach outlined above and the three-step inquiry have been "said to capture the holding of *Saucier*." *Estate of Carter v. City of Detroit*, 408 F.3d 305, 311 n.2 (6th Cir. 2005). Since the Supreme Court's holding in *Pearson*, the number of Sixth Circuit cases applying the three-step analysis has significantly dwindled. *See, e.g.*, *Jones v. Byrnes*, 585 F.3d 971 (6th Cir. 2009).

for a conclusion that the law is clearly established, they are not necessary to such a finding. The same is true of cases with 'materially similar' facts." *Id.* When determining whether a right is clearly established, the Court must "look first to decisions of the Supreme Court, then to decisions of this Court and other courts within our circuit, and finally to decisions of other circuits." *Beard v. Whitmore Lake School Dist.*, 402 F.3d 598, 606-07 (6th Cir. 2005) (quoting *McBride v. Village of Michiana*, 100 F.3d 457, 460 (6th Cir. 1996)).

The relevant inquiry here is whether the state of the law in 2007, the date of Van Heck's arrest, gave Defendants fair warning that their alleged search amounted to a constitutional violation. *See Hope v. Pelzer*, 536 U.S. 730, 741 (2002). As detailed above, the Supreme Court dramatically changed the landscape of permissible searches incident to arrest in *Gant*. Nevertheless, the state of the law in 2007 — two years before the Supreme Court's decision in *Gant* — established that a search of the kind alleged by Van Heck was unconstitutional.

In *Belton*, the Court held that "when a policeman has made a lawful custodial arrest of the *occupant of an automobile*, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *Belton*, 453 U.S. at 460 (emphasis added). Even prior to *Gant*, *Belton*'s referral to "occupant" had generally been interpreted to specifically refer to a "recent occupant." *Id.*; *see also Thornton*, 541 U.S. at 615–16. In *Thornton*, the Court considered the appellant to be a "recent occupant" when the pursuing office apprehended the passenger mere moments after he parked his car, exited it, and started to walk away from it. *Thornton*, 541 U.S. at 617–18. While the Court recognized that "an arrestee's status as a 'recent occupant' may turn on his temporal or spatial relationship to the car at the time of the arrest and search," it held that as long as the

13

arrestee was "the sort of 'recent occupant' of a vehicle such as [the] petitioner was" in Thornton, the arrestee could be considered a "recent occupant" of the vehicle. *Id.* at 622–24.

As noted above, Defendants main argument is that because the alleged search of Van Heck's truck occurred contemporaneous with his arrest, it was constitutionally permissible as a vehicular search incident to arrest. The defendants offer little to counteract the argument that Van Heck was not a "recent occupant" of his vehicle, which is a condition precedent to even reaching the "incidental" and "contemporaneous" inquiries. The arrest report indicates that the time lapse between the incident at 103 Grand Ave. and Van Heck's arrest outside of his home was approximately one hour. Arrest R. at 2. Thus, as much as one hour — double the time considered to be too temporally distant in *Laughton* — could have passed between Van Heck's access to, or occupancy of, his vehicle. Furthermore, the arrest report states that when the Defendants arrived, they did not observe Van Heck in or near his vehicle. Rather, he was seated at the end of his driveway. Nowhere in the arrest report or the records submitted by either party is it indicated that, at the time of the search and the arrest, which were contemporaneous, Van Heck had the truck "within his immediate control."

Defendants cite two cases in support of their claim for qualified immunity, neither of which actually favors their position. In *United States v. Laughton*, 437 F. Supp. 2d 665, 667 (E.D. Mich. 2006), the court held that the warrantless search of a vehicle was unconstitutional where the arrestee was in custody but not yet arrested, where the arrestee had not occupied his vehicle for at least thirty minutes, and where the arrestee was not in the vicinity of his vehicle at the time of arrest. The court held that given these sets of facts,

14

it could not conclude that the search was justifiable as "incident to arrest" per *Thornton*, nor did it "pass muster under the rationale of *Chimel* or *Belton*." *Id.* at 673.  Defendants also cite  *Northrop v. Trippett*, 265 F.3d 372, 379 (6th Cir. 2001), in which this Circuit held that

> the right to search an item incident to arrest exists even if that item is no longer accessible to the defendant at the time of search.  So long as the defendant had the item within his immediate control near the time of his arrest, the item remains subject to a search incident to arrest.

Neither case supports Defendants' assertion that in 2007 a reasonable person would not have known that his or her conduct violated a clearly established statutory right.

The state of the law in 2007, as well as the clearly-articulated policies justifying the state of the law, were such that a reasonable person would have known that the search of a vehicle after the suspect had been arrested, and when the arrest occurred away from the vehicle with no possibility of the arrestee accessing the vehicle, was in violation of the law.  Therefore, Defendants' request for summary judgment based upon qualified immunity must be denied.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that the defendants' objection to the Report (docket no. 38) is **OVERRULED** and that the Report (docket no. 37) is **ADOPTED**.

**IT IS FURTHER ORDERED** and the defendants' motion for summary judgment (docket no. 29) is **DENIED IN PART** with respect to Van Heck's Fourth Amendment illegal vehicle search claim against Cracchiolo and Fraser, and **GRANTED IN PART** with respect to all other elements of Van Heck's claim.

**SO ORDERED**.

15

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: January 6, 2011

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on January 6, 2011, by electronic and/or ordinary mail.

Alissa Greer
Case Manager

16